IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CYNTHIA NAJERA and CARLOS NAJERA, individually and as Next Friends and Parents of S.N., a minor,<br><br>    Plaintiffs,<br>v.<br><br>INDEPENDENT SCHOOL DISTRICT OF STROUD NO. I-54 OF LINCOLN COUNTY and<br><br>MANDI GUERRERO, individually,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-14-657-R |

## ORDER

Before the Court is Defendant, Independent School District, No. 54 of Lincoln County, Oklahoma's Motion for Summary Judgment. Doc. No. 24. Plaintiffs responded in opposition to the motion. Doc. No. 28. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* at 712-13. Having considered the parties' submissions, the Court grants the motion in part and denies it in part.

# Facts[1]

Minor S.N. and Defendant Guerrero's ("Ms. Guerrero") daughter were on the same softball team in the summer of 2011. Doc. No. 24, at 6, ¶ 1. At the time, Ms. Guerrero was employed by Stroud Public Schools. *See id.* at 10, ¶ 19. Around June 2011, Ms. Guerrero began texting S.N. during and after school. Doc. No. 24, at 6, ¶ 1. *Id.* At Ms. Guerrero's home and at school, she would rub S.N.'s hands, arms, and legs, give her letters, and hug and kiss her. *Id.* at 6-7, ¶¶ 2-5. The texting continued until January 2012 when Ms. Guerrero's husband, Silas Guerrero, found out about the messages and told his wife to stop. *Id.* at 7, ¶ 6. At the time, Mr. Guerrero was employed by the District as a teacher and coach. *Id.* at 10-11, ¶ 20. After her husband found out about the text messages, Ms. Guerrero contacted S.N. in other ways. *Id.* at 7, ¶¶ 7-8. In April 2012 Silas Guerrero kicked his wife out of the house and she moved in with her parents. *Id.* at 8, ¶ 11. Her mother, Lou Cooper, works in the office at the District middle school and her father, Jim Cooper, was the District softball coach. *Id.*

On April 12, 2012, S.N.'s sister found letters from Ms. Guerrero to S.N. *Id.*, ¶ 12. Plaintiff Cynthia Najera met with District Superintendent Joe Van Tuyl that day to inform him of Ms. Guerrero's conduct. *Id.* at 8-9, ¶ 13. Van Tuyl suspended Ms. Guerrero effective April 12, pending an investigation, and informed her that she was not allowed on school grounds or to attend any school function. *Id.* at 9, ¶ 15. A few days

---

[1] For this Section, the Court includes only undisputed facts, including those facts Plaintiffs do not specifically admit or deny. *See* LCvR 56.1(c) ("All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.").

later, Van Tuyl recommended that her employment be terminated, and Ms. Guerrero resigned on April 25. *Id.* at 10, ¶ 19.

Ms. Guerrero never returned to work after April 12, 2012. *Id.* But she did continue to attend her daughter's basketball and softball games. *Id.*, ¶ 20. At least once after April 12, Ms. Najera saw Ms. Guerrero go into the girls' locker room during one of S.N.'s basketball games; but S.N. was not in the locker room at the time. *Id.* at 11, ¶ 21; Doc. No. 28, Ex. 3, at 42 (lines 11-18). Ms. Najera testified that this happened in June 2012, and "[o]n more than one occasion." Doc. No. 28, Ex. 3, at 39 (lines 18-19), 42 (lines 11-14). On May 31, after seeing Ms. Guerrero working at the concession stand in the District's gymnasium during a basketball camp, Van Tuyl and the Athletic Director told her she could not volunteer for any school activity. Doc. No. 24, at 11, ¶ 24.

Despite Ms. Guerrero's presence at some school functions after April 12, 2012, she did not speak to or have physical contact with S.N. on District property at any time after that date. *Id.* at 15, ¶ 37. On August 7, 2012, Van Tuyl told Ms. Guerrero she could participate only as a spectator at school events as a parent to her children, and was not permitted to participate in a way that would place her in the direct vicinity of S.N. *Id.* at 12, ¶ 27. He also told her she was not permitted in the locker rooms or workout areas. *Id.* at 12-13, ¶ 27. But on October 31, 2012, Ms. Najera informed Van Tuyl that Ms. Guerrero had gone into the locker room again when cheerleaders were preparing for a competition. *Id.* at 13, ¶ 28.

## Analysis

### A. Title IX

Defendant seeks summary judgment on Plaintiffs' claim under Title IX. To prevail under Title IX, Plaintiffs must show 1) that S.N. "was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; 2) that the program receives federal assistance; and 3) that the exclusion from the program was on the basis of sex." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996) (citation omitted). Sexual harassment is a form of discrimination on the basis of sex, actionable under Title IX. *Escue v. N. Oklahoma Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (citing *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992)). To establish Defendant's supervisory liability under Title IX for the sexual harassment of S.N., Plaintiffs must prove 1) Defendant "remain[e]d deliberately indifferent to acts of harassment of which it ha[d] actual knowledge, 2) the harassment was reported to an appropriate person … with the authority to take corrective action to end the discrimination, and 3) the harassment was so severe, pervasive and objectively offensive that it … deprived the victim of access to the educational benefits or opportunities provided by the school." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Murrell v. Sch. Dist. No. 1, Denver, Colorado*, 186 F.3d 1238, 1246 (10th Cir. 1999)) (internal quotation marks omitted).

#### 1. Prior to April 12, 2012

Defendant argues that no "appropriate" District employee had actual knowledge of the harassment prior to April 12, 2012. Doc. No. 24, at 17-20. Plaintiffs assert Silas

Guerrero and Jim and Lou Cooper all had knowledge of the harassment as of January 2012, and they are "appropriate" District employees. *See* Doc. No. 28, at 3-4.

The issue here is whether "an appropriate person … with the authority to take corrective action to end the discrimination" had knowledge of Ms. Guerrero's harassment of S.N. prior to April 12, 2012. A teacher may be an "appropriate person" under Title IX if s/he "exercised control over the harasser and the context in which the harassment occurred." *Murrell*, 186 F.3d at 1248. There is no evidence in the record that Jim Cooper or Silas Guerrero, as teachers or coaches, had any authority over Ms. Guerrero such that they could "take corrective action to end the discrimination." The same is true of Lou Cooper, who works in the middle school office. Therefore, any knowledge they had about the harassment cannot support supervisory liability of Defendant under Title IX.

### 2. After April 12, 2012

Plaintiffs argue there are genuine issues of fact concerning the reasonableness of Defendant's actions after it was notified of the harassment on April 12, 2012. Doc. No. 28, at 12. Although it is a very close question, the Court finds Plaintiffs have produced just enough evidence to make this issue a question of fact. To be liable under Title IX, Defendant must have been deliberately indifferent to the harassment. A District is deliberately indifferent to harassment "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 (10th Cir. 2008) (quoting *Davis, as Next Friend of LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

Plaintiffs assert that although Van Tuyl "promised Plaintiffs that Mandi Guerrero would be prohibited from being on school property from April 12, 2012," she "was allowed by the school to be on school property, including the girls' locker room, the soft[]ball field, and basket[]ball games … which caused opportunities at the school." Doc. No. 28, at 10. In response, Defendant points to the undisputed fact that "[a]t no time after April 12, 2012 did Defendant Guerrero speak to or have physical contact with S.N. on District property." Doc. No. 29, at 5; Doc. No. 24, at 15, ¶ 37.

"The Supreme Court has stated 'the deliberate indifference must, at a minimum, cause students to undergo harassment or make them *liable or vulnerable to it*.'" *Escue*, 450 F.3d at 1155 (emphasis added) (quoting *Davis*, 526 U.S. at 644-45). Therefore, a District may be liable under Title IX if its deliberate indifference causes students to be vulnerable to harassment.[2] *See Rost*, 511 F.3d at 1123 ("Here the district's response did not cause K.C. to undergo harassment or make her liable or vulnerable to it." (citing *Davis*, 526 U.S. at 645)).

Van Tuyl attests that on April 13, 2012, he started an investigation into the allegations of sexual harassment. Doc. No. 24, Ex. 3, ¶ 10. In the investigation, he learned that S.N. and Ms. Guerrero's daughter "were understood to be very close friends and sports teammates on District teams." *Id.* at 5, ¶ 12. He also learned that the two girls "were often seen together at school events or contests, and often in the presence of Mandi

---

[2] This is based on the statutory language, which prohibits a student from being "*subjected to discrimination* under any education program or activity receiving Federal financial assistance." *Davis*, 526 U.S. at 639 (quoting 20 U.S.C. § 1681(a)). The Supreme Court in *Davis* relied on a definition of "subject" found in Random House that includes "to make liable or vulnerable; lay open; expose." *Id.* at 645.

Guerrero." *Id.* A reasonable jury could infer that based on his investigation and his reading of the letters Ms. Guerrero wrote to S.N., *id.* at 6, ¶ 16, Van Tuyl was aware that one of the places Ms. Guerrero would meet S.N. was the locker room, where the two would hug and kiss. *See* Doc. No. 24, at 7, ¶ 5. It would also be reasonable to infer Van Tuyl was aware that Ms. Guerrero put letters into S.N.'s basketball bag. *See id.* ¶ 7.

Ms. Najera testified that she saw Ms. Guerrero go into the locker room in June 2012 during one of S.N.'s basketball games and that she notified Van Tuyl. Doc. No. 28, Ex. 3, at 39-40. Ms. Najera was "upset because [Ms. Guerrero] used that avenue to get to [S.N.] already." *Id.* at 40 (lines 15-16). Van Tuyl said "he would look into it," but that "he could not prevent her from having contact with … her child," even though Ms. Guerrero's daughter was not in the locker room at the time. *Id.* at 47-48. Ms. Najera further testified that she saw Ms. Guerrero go into the locker room "[o]n more than one occasion," even after the initial time she saw her in June. *Id.* at 42 (lines 11-14).

Van Tuyl's only response to Ms. Guerrero going into the locker room in June 2012 appears to be a letter dated August 7, 2012 informing her, once again, that she is not permitted in the locker rooms. Doc. No. 24, Ex. 3, at 10-11, ¶ 27. Even after sending that letter, Van Tuyl learned on October 31, 2012 that Ms. Guerrero was in the locker room again when cheerleaders were preparing for a competition, an activity in which S.N. was participating. *Id.*, Ex. 3, at 11-12, ¶ 28. The cheerleading coach told Van Tuyl that Ms. Guerrero was in the locker room helping the cheerleaders with their hair and make-up. *Id.* Despite evidence that Ms. Guerrero was in the locker room at least twice after April 12, 2012, there is no evidence in the record that S.N. was in the locker room at

7

the same time as Ms. Guerrero at any point after that date. *See* Doc. No. 24, at 11, 13 ¶¶ 21, 28.

Drawing all reasonable inferences in favor of Plaintiffs, Van Tuyl knew that a student had been sexually harassed by a coach in the girls' locker room, and that one way the coach would communicate with the student would be to place letters into the student's basketball bag. After telling the coach she could not attend any school functions, Van Tuyl learned of the coach going into the girls' locker room during a basketball game in which the student was participating. And after again telling the coach she was not permitted in the locker rooms, Van Tuyl learned that she went into the girls' locker room during another event in which the student was participating.

It appears the only action Van Tuyl took in response to Ms. Guerrero disobeying his order to stay off of District property, including the locker rooms, and away from school functions, was to reissue the order. There is no evidence in the record that he informed other staff members, such as the cheerleading coach, that Ms. Guerrero was not permitted in the locker room, or that he followed through on banning her from school functions altogether, even as a parent, after he learned she was not abiding by his restrictions on her attendance. A reasonable jury could find Van Tuyl's failure to enforce his order for Ms. Guerrero not to enter the girls' locker room made S.N. vulnerable to continued harassment, and that his response was clearly unreasonable in light of the known circumstances. The Court denies Defendant's motion for summary judgment on Plaintiffs' Title IX claim.

## B. Section 1983

Plaintiffs contend Defendant is liable under § 1983 for sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment because "the decision by Superintendent Van Tuyl to allow Mandi Guerrero to continue appearing on school property including locker rooms where she could run into S.N. renders the district's inaction a custom or policy of School District." Doc. No. 28, at 16. Defendant seeks summary judgment on this claim because there is no "continuing, persistent, and widespread practice of unconstitutional misconduct" by its employees, and the undisputed facts show that it was not deliberately indifferent to Ms. Guerrero's conduct after April 12, 2012. Doc. No. 24, at 26.

To hold a municipality liable under § 1983, Plaintiffs must demonstrate that "a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249 (citation omitted). The Tenth Circuit has indicated that a superintendent may be a final policy maker concerning the District's sexual harassment policy if s/he is authorized to implement the policy. *Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty.*, 984 F. Supp. 2d 1144, 1153 (N.D. Okla. 2013) (citing *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 456-57 (10th Cir. 2010) (unpublished)). Van Tuyl attests that as Superintendent, he serves as the chief executive officer of the District, Doc. No. 24, Ex. 3, at 1-2, ¶ 2, and the District's sexual harassment policy notes that the Board has charged him with implementing that policy, Doc. No. 24, Ex. 13, at 1-2 ("[T]he District does not discriminate on the basis of sex ….

The Superintendent is designated by the Board of Education to coordinate the District's efforts to comply with this assurance."). Because Plaintiffs have produced sufficient evidence for a reasonable jury to find Defendant was deliberately indifferent to the sexual harassment of S.N. in violation of Title IX, and because Van Tuyl, designated as an official policy maker with regard to the District's sexual harassment policy, led Defendant's response to Ms. Guerrero's sexual harassment of S.N., the Court denies Defendant's motion to dismiss Plaintiffs' § 1983 claim.

**C. Negligence**

Plaintiffs contend Defendant breached its duty to prove a safe environment for students. Doc. No. 28, at 14. The three elements to a claim for negligence are "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith v. City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014) (citations omitted).

Plaintiffs first argue Defendant failed to prevent Ms. Guerrero from continuing to sexually harass S.N. after April 12, 2012. *Id.* But they produce no evidence in support of their contention that the harassment continued.[3] Plaintiffs next argue Defendant failed to

---

[3] The Court finds no evidence of continued harassment in the cited portions of Ms. Najera's deposition. Furthermore, any information contained in Plaintiff's Responses to Defendant Stroud Public School's First Interrogatories and Request for Production of Documents to Plaintiffs, Doc. No. 28, Ex. 4, may not be used to defeat the motion for summary judgment because it is not verified. *See Rohr v. Allstate Fin. Servs.*, 529 F. App'x 936, 940 n.2 (10th Cir. 2013) (unpublished) ("We also do not rely on Rohr's factual assertions regarding prior EFSs' past performance in Utah that are based solely on his unverified complaint and unverified interrogatories and are otherwise not supported in the record." (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *Comm. for First Amendment v. Campbell*, 962 F.2d 1571, 1522 (10th Cir. 1992); *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir. 1956)).

properly monitor the school's video cameras because most of the harassment occurred in plain view of those cameras. *Id.* But the only evidence offered in support of this claim is Plaintiffs' unverified answers to Defendant's Interrogatories. *Id.*

Finally, Plaintiffs assert Defendant "failed to train its administrators to recognize, investigate and review sexual harassment in accordance with Title IX." *Id.* at 15. Oklahoma recognizes a claim for mental anguish when it is accompanied by physical injury; but proof of some physical injury is required. *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (citing *Slaton v. Vansickle*, 872 P.2d 929, 931 (Okla. 1994); *Ellington v. Coca Cola Bottling Co. of Tulsa*, 717 P.2d 1069, 111 (Okla. 1986)). In conceding their lack of a valid claim for negligent infliction of emotional distress, Plaintiffs admit "there is no evidence in the records for any physical injuries to the Plaintiffs []or S.N. resulting from Defendants' negligence." Doc. No. 28, at 17-18. With no evidence of any physical injuries or monetary damages, Plaintiffs have not created a genuine dispute of fact on this issue. The Court grants Defendant summary judgment on Plaintiffs' negligence and negligent infliction of emotional distress claims.

## Conclusion

In accordance with the foregoing, Defendant, Independent School District, No. 54 of Lincoln County, Oklahoma's Motion for Summary Judgment, Doc. No. 24, is GRANTED in part and DENIED in part. The Court grants summary judgment for Defendant on Plaintiffs' claims for negligence and negligent infliction of emotional distress. Plaintiffs' Title IX and § 1983 claims against Defendant remain.

IT IS SO ORDERED this 14th day of July, 2015.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE